**NOT FOR PUBLICATION**

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| NISSAN MOTOR ACCEPTANCE CORPORATION,<br><br>                              Plaintiff,<br><br>          v.<br><br>INFINITI OF ENGLEWOOD, LLC, *et al.*,<br><br>                              Defendants. | Case No. 18cv17228 (EP) (MAH)<br><br>**OPINION** |

**PADIN, District Judge.**

This case involves the breakdown between three car dealerships, their lender, and other parties to related loan documents.  Nissan Motor Acceptance Corporation ("NMAC"), the lender, filed suit against multiple Defendants, including the three car dealerships: Infiniti of Englewood, LLC ("Infiniti Englewood"), Nissan of Hawthorne, LLC ("Nissan Hawthorne"), Elite Nissan of Bergenfield, LLC ("Elite Nissan," and together with Infiniti Englewood and Nissan Hawthorne, "Dealers"); the Dealers' principals James D. Demetrakis ("Demetrakis") and John P. Stefanidis ("Stefanidis"); and the Dealers' respective real estate affiliates Nissan of Hawthorne Realty, LLC ("Hawthorne Realty"), Nissan of Hawthorne Realty II, LLC ("Hawthorne Realty II"), and Washington Avenue Associates, LLC ("Wash. Ave. Assocs.") (all parties collectively "Defendants").  NMAC now moves to appoint a receiver for properties owned or otherwise affiliated with Defendants.  D.E. 336 ("Mot.").  The Court decides the motion without oral argument.  *See* Fed. R. Civ. P. 78(b); L.Civ.R. 78(b).  For the reasons below, the Court will **GRANT** the motion.

## I.    BACKGROUND[1]

### A.  The Parties' Mortgage Agreements

Pursuant to numerous agreements, NMAC extended credit to Dealers and their respective real estate affiliates of Hawthorne Realty, Hawthorne Realty II, and Wash. Ave. Assocs. (collectively, "Borrowers").  Mot. at 2.  Relevant to this dispute,[2] NMAC extended credit to Hawthorne Realty, Hawthorne Realty II (together with Hawthorne Realty, the "Hawthorne Realty Entities"), and Wash. Ave. Assocs. in exchange for recorded mortgages on some of their respective properties.  *See id.* at 3-4.  First, in 2013, NMAC extended credit to the Hawthorne Realty Entities in exchange for a recorded mortgage ("Hawthorne Mortgage") on property known as 1052 and 1060 Goffle Road, Hawthorne, New Jersey ("Hawthorne Property").  *Id.* at 3.  Second, in 2014, NMAC extended credit to Wash. Ave. Assocs. in exchange for a recorded mortgage ("Bergenfield Mortgage") on property known as 314-18 and 358 Washington Avenue Road, Bergenfield, New Jersey ("Bergenfield Properties") (together with the Hawthorne Property, "Properties").  Both the Hawthorne Mortgage and the Bergenfield Mortgage (collectively, "Mortgages") "include an assignment of rents provision[] and the Borrowers' consent to the appointment of a receiver upon default."  *Id.* at 4; *see also id.* at 3; D.E. 324 ("Counter-SOMF"[3]) ¶¶ 31, 36 (admitting existence of Mortgages).

---

[1] This section derives mainly from the parties' briefings.

[2] The parties entered into various other agreements related to the financing of Defendants and their indebtedness to NMAC.  *See, e.g., id.* at 2-5.  However, in deciding NMAC's motion for summary judgment (D.E. 310), the Court found genuine disputes of material fact existed as to circumstances surrounding the enforcement of those agreements (D.E. 349).  Accordingly, the Court limits its review to the mortgage agreements and the related facts.

[3] Counter-Statement of Material Facts.  Defendants submitted the Counter-SOMF in response to NMAC's motion for summary judgment.

"[A]t some point[,]" the Hawthorne Realty Entities and Wash. Ave. Assocs. stopped paying taxes on their respective Properties.  Counter-SOMF ⁋ 129; Mot. at 6 (specifically claiming that "Defendants have failed to pay the property taxes on the . . . Properties . . . since December 2018").  As a result, NMAC has paid "in excess of one million dollars across [the] Properties in property taxes to protect its collateral and prevent tax foreclosures."  Mot. at 6.  This failure to pay taxes constitutes an event of default under both Mortgages.  *Id.*

In January 2022, Washington Avenue Acquisition, LLC, owned by Louis Stern, acquired 100% membership interest in Wash. Ave. Assocs.  D.E. 343 ("Opp'n") at 3.  In August 2022, the Hawthorne Realty Entities leased the Hawthorne Property to J.V.C. Land, LLC ("JVC"); pursuant to this agreement, JVC would have "possession of the Hawthorne Propert[y] until March 31, 2023, with the total rent being $10 for the entire eight-month period."  Mot. at 7.

### B.  Procedural History

NMAC filed its complaint on December 14, 2018.[4]  NMAC filed its Second Amended Complaint on October 7, 2019, asserting twelve causes of action against Defendants.  D.E. 107.  Defendants answered on October 21, 2019, asserting six counterclaims.  D.E. 112.  NMAC moved for partial summary judgment on September 9, 2022, which was denied on June 26, 2023.  D.E. 349.  On February 24, 2023, NMAC moved to appoint a receiver to the Properties.  *See* Mot.  Wash. Ave. Assocs. opposed.  *See* Opp'n.  NMAC has replied.  D.E. 345 ("Reply").

## II.  LEGAL STANDARD

A party can move for the appointment of a receiver pursuant to Federal Rule of Civil Procedure 66.  In a diversity suit, the Court applies federal law to determine whether to appoint a

---

[4] On November 18, 2019, this case was consolidated with two other cases, both involving Dealers and Nissan North America, the Dealers' manufacturer.  D.E. 111.

receiver.  *See, e.g.*, *Wells Fargo Bank, N.A. v. CCC Atl., LLC*, 905 F. Supp. 2d 604, 610 (D.N.J. 2012).

Generally, "the appointment of a temporary receiver is an extraordinary form of relief and should be granted only 'in the face of compelling circumstances and in the absence of a less dramatic remedy.'"  *Fimbel v. Fimbel Door Corp.*, 2016 WL 1379788, at *3 (D.N.J. Apr. 7, 2016) (quoting *Leone Indus. v. Associated Packaging, Inc.*, 795 F. Supp. 117, 120 (D.N.J. 1992)). "Because a receiver unquestionably interfere[s] with an individual's right to otherwise control [their] property[,]" the Court "should appoint a receiver only in cases of necessity, and when the plaintiff clearly and satisfactorily shows that an emergency exists and the receiver is needed to protect the property interests of the plaintiff."  *Julius Realty Corp. v. Thompson*, 2022 WL 2981003, at *7 (D.N.J. July 28, 2022) (first alteration in original) (internal quotation marks omitted).  However, "where the parties have agreed *ex ante* . . . to the appointment of a receiver" under circumstances such as default, the "appointment of a receiver is not such a drastic remedy." *CCC Atl.*, 905 F. Supp. 2d at 615; *see also Stonebridge Bank v. Nita Props., LLC*, 2011 WL 2173771, at *2 (D.N.J. June 1, 2011) ("[A]lthough not dispositive, the fact that [the non-movant] consented to receivership in the [mortgage agreement] heavily favors appointment of a receiver.").

Courts in this district uniformly require the movant to establish: (1) "that they have an equitable interest in the property to be seized or . . . judgments . . . cannot otherwise be satisfied"; (2) "that there is an imminent danger of the property being lost, injured, diminished in value, or squandered"; and (3) "that other legal remedies are inadequate."  *CCC Atl.*, 905 F. Supp. 2d at 615 (cleaned up)

The Court may consider additional equitable factors.  "[I]n the context of a mortgage foreclosure," the Court may consider whether (1) "'the property is inadequate security for the

loan[,]'" (2) "'the mortgage contract contains a clause granting the mortgagee the right to a receiver[,]'"[5] (3) "'the continued default of the mortgagor[,]'" (4) "'the probability that foreclosure will be delayed in the future[,]'" (5) "'the unstable financial status of the mortgagor[,]'" and (6) "'the misuse of project funds by the mortgagor.'" *Id.* at 614 (quoting *United States v. Berk & Berk*, 767 F. Supp. 593, 597 (D.N.J. 1991)).  Further, if "the moving party seeks a receiver who will not only collect rents and profits, but will also manage and operate the mortgaged property pending foreclosure," then the Court may consider additional equitable factors, such as: (1) the dangers of waste delays in foreclosure, (2) the non-movant's fraudulent conduct, (3) the probability that the movant would suffer greater harm than the non-movant were receivership denied, (4) the non-movant's probability of success in the case, and (5) the possibility that the movant's property interests will be irreparably injured.  *Id.* at 614-15.

## III.    ANALYSIS

NMAC must first demonstrate that it meets all three requirements for appointing a receiver. *See CCC Atl.*, 905 F. Supp. 2d at 614-15.  The Court finds it does.  And because this case involves a mortgage foreclosure and because NMAC seeks for the receiver to collect rents and profits (*see* D.E. 336-10 ¶¶ 10, 34), the Court will also consider equitable factors relevant to this case, which the Court finds favor appointing a receiver.  *See Fimbel*, 2016 WL 1379788, at *3 (considering select additional equitable factors "when appropriate" as "helpful" to the Court's analysis).

### A.  The General Requirements and Equitable Factors Counsel Appointing a Receiver

As an initial matter, the Court notes that Wash. Ave. Assocs. does not contest (1) that Defendants agreed to the appointment of a receiver in the event of a default on the Mortgages or (2) that default has occurred.  This weighs heavily in favor of appointing a receiver and guides the

---

[5] This factor and other factors can overlap with some of the Court's initial considerations.

Court's analysis, as appointment of a receiver would no longer be a drastic remedy.  *See CCC Atl.*, 905 F. Supp. 2d at 615 (noting that "[t]he importance of these contractual provisions [consenting to appointment in the event of default] cannot be underestimated because they set apart [a] commercial foreclosure case from the traditional scenario in which a receiver is sought at equity and no such contractual provisions exist").

### 1. NMAC has an equitable interest in the Properties

First, NMAC must demonstrate that it has an equitable interest  in the Properties.  *See id.* Wash. Ave. Assocs. concedes that NMAC has an equitable interest in the Properties by virtue of the Mortgages.  Opp'n at 7.  Accordingly, the first requirement of an equitable interest is met as to the Properties.

### 2. An imminent danger exists as to the Properties

Second, NMAC must demonstrate an imminent danger that the Properties will be "lost, injured, diminished in value[,] or squandered."  *CCC Atl.*, 905 F. Supp. 2d at 615 (internal quotation marks omitted).  As for the Hawthorne Property, NMAC argues there is an imminent danger it will be "diminished in value [and] squandered" because (1) "Defendants have diverted and retained rental income . . . despite the assignment of rents provision in the Mortgage" and (2) Defendants allowed the Hawthorne Property to "sit vacant and waste away for nearly two years" before entering into a "sham lease" with "a third-party . . . for a total of $10" over an eight-month period "without notifying NMAC . . . ."  Mot. at 14; *see also* Reply at 15.  As for the Bergenfield Properties, NMAC argues there is an imminent danger because (1) Defendants allowed them to not only "remain vacant for nearly two years[,]" but (2) at least one of the Bergenfield Properties "remains completely unused."  *Id.* at 14-15.  And, as for all of the Properties, NMAC argues that

6

it "is receiving no income . . . because Defendants have admittedly not made *any* payments in over four years." *Id.* at 15 (emphasis added).

In response, Wash. Ave. Assocs. concedes that NMAC demonstrated an imminent danger exists as to the Hawthorne Property,[6] arguing only that NMAC "fails to prove that the Bergenfield Propert[ies are] subject to imminent danger . . . ." Opp'n at 3.[7]  Specifically, Wash. Ave. Assocs. argues that NMAC's only arguments "are that NMAC has had to pay the real estate taxes and that . . . 'the Bergenfield Propert[ies] remain[] completely unused.'"  Opp'n at 5 (quoting Mot. at 15). Wash. Ave. Assocs. claims that "Stern has offered to pay the real estate taxes on the Bergenfield Propert[ies]" and that one Bergenfield Property "is being used by Stern's . . . Nissan dealership." *Id.*; *see also id.* at 4 ("Stern has [also] made several proposals to NMAC to obtain a release of or to satisfy the NMAC mortgage through use of his own funds and a refinancing with another lender, but NMAC has been consistently unresponsive.").  However, NMAC argues that Stern's proposals were made pursuant to prior settlement discussions that are (1) inadmissible under Federal Rule of Evidence 408 ("Rule 408") and (2) irrelevant to the appointment of a receiver.  Reply at 2, 6.

First, the Court agrees with NMAC that these proposals are both inadmissible and irrelevant for the Court's consideration.  As evidence of Stern's offers, Wash. Ave. Assocs.

---

[6] Wash. Ave. Assocs. makes no arguments specific to the Hawthorne Property.  *See, e.g.*, *Sang Geoul Lee v. Won II Park*, 720 Fed. App'x 663, 666 (3d Cir. 2017) (failure to respond to an argument acts as a concession of that argument); *Johnson v. East Orange VA Med. Ctr.*, 2023 WL 2770423, at *5 (D.N.J. Apr. 4, 2023) (same).

[7] Additionally, the Court's independent analysis establishes that an imminent danger exists as to the Hawthorne Property.  *See, e.g.*, *Julius Realty Corp.*, 2022 WL 2981003, at *7 (finding an imminent danger existed when the movant sufficiently established concerns regarding the company's cash flows); *McDermott v. Russell*, 523 F. Supp. 347, 351 (E.D. Pa. 1981) (finding imminent danger when the plaintiff stated sufficient facts that the company was suffering a financial loss due to the non-movant's actions); *Otero v. Vito*, 2008 WL 4004979, at *3 (M.D. Ga. Aug. 25, 2008) (finding an imminent danger existed in part where "[t]here [was] indication that" the property was transferred "without consideration" as part of "nothing more than a sham").

submits a copy of 2021 emails where *Defendants'* counsel, in detailing different proposals, labels

the proposals as "FOR SETTLEMENT PURPOSES ONLY.  INADMISSIBLE."  *See generally*

D.E. 342, Ex. A ("Proposals").  Rule 408 governs the admissibility of settlement agreements as

probative evidence and provides:

> **(a) Prohibited Uses.** Evidence of the following is not admissible--
> on behalf of any party--either to prove or disprove the validity or
> amount of a disputed claim or to impeach by a prior inconsistent
> statement or a contradiction:
>
> > **(1)** furnishing, promising, or offering--or accepting,
> > promising to accept, or offering to accept--a valuable
> > consideration in compromising or attempting to compromise
> > the claim; and
> >
> > **(2)** conduct or a statement made during compromise
> > negotiations about the claim--except when offered in a
> > criminal case and when the negotiations related to a claim by
> > a public office in the exercise of its regulatory, investigative,
> > or enforcement authority.
>
> **(b) Exceptions.** The court may admit this evidence for another
> purpose, such as proving a witness's bias or prejudice, negating a
> contention of undue delay, or proving an effort to obstruct a criminal
> investigation or prosecution.

Where Rule 408 does not explicitly prohibit or permit evidence of settlement negotiations,

the Court "must be sensitive to the purpose of the provision[,]" which includes "the obvious public

policy interest in encouraging settlement of private disputes."  *Lo Bosco v. Kure Eng'r Ltd.*, 891

F. Supp. 1035, 1037-38 (D.N.J. 1995); *see also Affiliated Mfrs., Inc. v. Aluminum Co. of Am.*, 56

F.3d 521, 526 (3d Cir. 1995) ("The policy behind Rule 408 is to encourage freedom of discussion

with regard to compromise.").  To this end, the Court should weigh the probative value of the

evidence against Rule 408's purpose.  *See Sterling Savs. Bank v. Citadel Dev. Co.*, 565 F. Supp.

2d 1248, 1255 (D. Or. 2009) (citing cases).

Wash. Ave. Assocs. implies no imminent danger exists because NMAC could have eliminated the need for this motion by acquiescing to the Proposals' terms. *See* Opp'n at 5-6. However, Wash. Ave. Assocs. offers no reason as to why the two-year-old Proposals are probative as to whether an imminent—*i.e.*, current—danger exists. Further, Rule 408's purpose of encouraging settlement discussions would not be promoted by finding rejected, outdated settlement proposals as probative when evaluating imminent danger based on present circumstances; allowing this evidence could discourage settlement in lengthy litigation where the ongoing circumstances create an imminent danger. *See Lo Bosco*, 891 F. Supp. at 1037. Accordingly, the Court finds that the Proposals are inadmissible and irrelevant to its determination.

Next, the Court finds an imminent danger exists as to the Bergenfield Properties. Wash. Ave. Assocs. does not dispute that the Defendants have defaulted under the Bergenfield Mortgage by failing to pay taxes, which NMAC then had to pay. *See McDermott v. Russell*, 523 F. Supp. 347, 351 (E.D. Pa. 1981) (finding imminent danger when the movant stated sufficient facts that the company was suffering a financial loss due to the non-movant's actions). Nor does Wash. Ave. Assocs. dispute this failure constitutes default and that the Bergenfield Mortgage explicitly permits the appointment of a receiver in the event of default. *See CCC Atlantic*, 905 F. Supp. 2d at 615 (the non-movant's *ex ante* consent to the appointment of a receiver favors appointment).

Also guiding the Court's determination are the relevant equitable factors of Defendants' fraudulent conduct and financial standing, which also favor appointing a receiver. *See Fimbel*, 2016 WL 1379788, at *3 (considering additional equitable factors "when appropriate" as "helpful" to the Court's analysis); *Wilmington Trust v. 24 Com. St. LLC*, 2021 WL 4786117, at *8 (D.N.J. Oct. 14, 2001) (finding the non-movant's conduct "strongly" favored appointing a receiver when the non-movant "ha[d] been in default of its obligations for several years[,]" including "not

ma[king] any mortgage payments since early 2020 . . . and . . . falling behind on its taxes"); *CCC Atl.*, 905 F. Supp. 2d at 616 (finding equity favored appointing a receiver where a "continued failure to cure the default[] demonstrates [the non-movant's] doubtful financial standing"); *Berk*, 767 F. Supp. at 599-600 (appointing a receiver where the non-movant "misused" funds, there was a "contractual right to the appointment of a receiver[,]" and the non-movant "refused to pay the mortgage despite the availability of funds to do so").

Accordingly, the second requirement of imminent danger is met as to the Properties.

### 3. Other legal remedies are inadequate

Finally, NMAC must demonstrate that other legal remedies are inadequate. *CCC Atl.*, 905 F. Supp. 2d at 615. Wash. Ave. Assocs. argues only that "there is no justification for the equitable remedy [NMAC] now seeks" because "NMAC is in litigation to recover its debt." Opp'n at 7.

The Court finds no adequate legal remedy is available to NMAC. In *Stonebridge Bank*, the Court found that no adequate legal remedy existed where the non-movant's "delinquency . . . *may* . . . force[] [the movant] to pay all delinquent real estate taxes on the [m]ortgaged [p]roperty." 2011 WL 2173771, at *2 (emphasis added). Here, NMAC was *already* forced to pay over $1 million in delinquent taxes. *See* Mot. at 15-16. Additionally, NMAC is receiving no rent from the Properties, which were unused for a portion of time and may remain unused. *See* Reply at 12-13. "[A] foreclosure action will not compensate [the movant] for all potential income, profits, and revenues" caused by the non-movant's "failure to administer and maintain" the property. *Stonebridge Bank*, 2011 WL 2173771, at *2; *see also Julius Realty Corp.*, 2022 WL 2981003, at *7 n.5 (finding other legal remedies were inadequate where the non-movant "fail[ed] to distribute corporate dividends to [the movant]").

Accordingly, the third requirement that there be no adequate legal remedy is met as to the Properties.  As such, NMAC has sufficiently demonstrated the requirements to appoint a receiver. And, as noted above, the Court finds the relevant equitable factors favor appointing a receiver.

## IV.   CONCLUSION

For the reasons stated above, the Court will **GRANT** NMAC's motion to appoint a receiver.  An appropriate Order accompanies this Opinion.


Dated: August 17, 2023

Evelyn Padin, U.S.D.J.